LOOMIS et al. v. ROSENTHAL.

(Circuit Court, D. Oregon. March 28, 1895.)

No. 1,935.

FEDERAL COURTS—JURISDICTION—CITIZENSHIP—CHANGE OF RESIDENCE.

L. and S., who alleged that they were citizens of the state of Washington, brought suit in the United States circuit court against R., a citizen of Oregon. It appeared that L., for six years before her husband's death, resided with him in Oregon; that before her husband's death she had contemplated bringing the suit; that in a few months after his death she removed with her children to her mother's home in Washington, taking some articles of personal property, but leaving the bulk of her furniture in Oregon, where she owned a house and lot; that she remained a few months in Washington, and then returned to Oregon, ostensibly to secure the benefit of better schools for her children. L. testified that she intended, some time, to return to Washington, and that she regarded her mother's farm, in that state, as her home, but her testimony, as to her purpose in returning to Oregon and her stay there, was ambiguous. *Held,* that L. was a citizen of Oregon, and the federal court had no jurisdiction of a suit between her and another citizen of that state.

This was a suit by Katie J. Loomis and Olive S. Swafford against Lewis Rosenthal to have the defendant declared trustee of certain real estate. The cause was heard on the pleadings and proofs as to the citizenship of one of the complainants.

Deady & Metcalf, Dell Stuart, and Mary A. Leonard, for complainants.

Joseph Simon, C. J. McDougall, and Wallace McCamant, for defendant.

GILBERT, Circuit Judge. The complainants, as the heirs at law of J. V. Clary, deceased, bring a suit against the defendant, and pray the court to have him declared the trustee of certain real estate, which was sold by him as administrator of the estate of said J. V. Clary, at which sale it is alleged the defendant was indirectly the purchaser, and to require him to reconvey the same to the complainants. The bill alleges that the said intestate left surviving him three children and his widow, and that the widow and the other heir have conveyed their interests in said land to the complainants. Upon the final hearing the defendant moved to dismiss the suit for want of jurisdiction, upon the ground that one of the complainants is a citizen of the same state with the defendant. The complainants alleged in their bill that they were citizens and residents of the state of Washington. The defendant made no formal plea to the jurisdiction, but in his answer traversed these averments of the bill. Upon the issue so made, the parties took testimony concerning the citizenship and residence of Katie J. Loomis, one of the complainants. The evidence, in substance, is that she and her husband had resided in Oregon for six years preceding the latter's death, which occurred upon the 13th day of February, 1892. Before that time she had contemplated bringing the present suit, and had engaged counsel for

v.67F.no.4—24

that purpose. On the 2d of April, 1892, she testifies that she removed with her five children to her mother's farm in Clarke county, Wash., intending to make that place her home. The evidence is that she took with her some personal property,—bedding, clothing, chairs, and a sewing machine,—but the greater portion of her furniture was left at her former home in Portland. She remained with her mother in Clarke county, Wash., for some months,—the exact time is not stated,—when she returned with her children to Portland, where she resumed housekeeping, presumably with the furniture that she had left, and where she has since resided. Her explanation of her return is that she came back for the purpose of educating her children, since the schools which were accessible from her mother's farm were inferior to those at Portland. She testified that she might remain in Oregon until the education of her children should be complete, but that her home is with her mother, and that she intends ultimately to return there. During all the time referred to she has owned a house and lot in Portland, but in the state of Washington she has owned no real property, has had no rented house, nor a rented room, nor any place which she could of right call her home. The most that she can claim is that a home is and has been offered her with her mother and her stepfather, and that by their permission she considers their home hers, and that she has left at their house a few articles of personal property. This suit was begun upon the 19th day of May, 1892. Was Mrs. Loomis at that date a citizen and resident of the state of Washington? In determining this question, the court must be guided by her acts as well as by her declarations. If she removed her residence in good faith from Oregon to Washington, intending to reside there permanently, and still entertained that intention at the commencement of the suit, she was a citizen of Washington, no matter what may have been her purpose in so doing, and her status as a citizen of that state would not be affected by the fact that she subsequently returned temporarily to Oregon. But in dealing with the question of citizenship, as affecting one who for years had been a citizen of Oregon and removed therefrom for a few months, during which interval she commenced a suit in this court, which as a citizen of this state she could not have done, and thereafter returned to Oregon, and to her former possessions, where she has since resided, there must be other and more convincing proof than mere declarations of her relation to the state of which she claims to be a citizen. Her mother's farm in Clarke county, Wash., is but a short distance from Portland, and is easily accessible therefrom. The condition of the schools there was as readily ascertainable before the removal as after. Her retention of her property and household furniture in Portland, her short sojourn in Washington, together with the other circumstances in the case, all point to the conclusion that her removal from Oregon was accompanied with a present intention to return as soon as she could do so without defeating the jurisdiction of this court. There is much in the language of her testimony to indicate this. She says, for

instance, that in removing to Washington on April 2, 1892, it was her "idea to stay there permanently." This is far from saying that it was her definite intention to remain there, or that she still entertained that intention six weeks later, when she commenced the suit. A portion of her testimony was as follows:

"Q. Isn't it a fact that you intend to remain here until your children have completed their education? A. I can, if I see fit, or I can go there. Q. Isn't it your present purpose to remain here until your children complete their education? A. No; not altogether. Q. What is your present purpose about them? A. I do not seem to have any. Q. You haven't any well-defined idea about what you intend to do about going back there or staying here? A. O, I intend to go back there some time. Q. You don't know, then, when you will go? A. No."

This case is very similar to that of Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, where it was held to be the duty of the trial court to dismiss a cause brought by a plaintiff who had invoked the jurisdiction of the court by virtue of his removal to another state, in which it appeared that he had no purpose to acquire a domicile or a settled home.

It is contended that the cause should also be dismissed as to the other complainant, for the reason that as to her the suit was commenced collusively, and without her consent or knowledge. The evidence does not sustain this contention. While the testimony is that she did not directly employ the counsel who represent her, there is evidence sufficient to prove that through communication with her co-complainant she was aware of the latter's action in instituting the suit, and consented thereto. But, since the suit must be dismissed as to one of the complainants, it necessarily follows that a like order must be made as to the other. In a suit such as this, brought to enforce a trust in real estate, upon the ground that the defendant has wrongfully purchased the same, all the heirs of the intestate, or at least all who represent their interests, are indispensable parties, and without their presence the court is powerless to render a decree affecting the merits of the controversy. Hoe v. Wilson, 9 Wall. 501. The bill will therefore be dismissed, without prejudice, at the cost of the complainants.